No. 2210.
Second Circuit Appeal.

CARROLL THIBAULT, LIQUIDATOR OF CUNNINGHAM COMMISSION COM-PANY, v. W. R. O'NEAL, INC.

(Feb. 20, 1925, Opinion and Decree.)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Obligations—Par. 74, 76; Sales—Par. 42.

Where there is an understanding between the parties to a contract that, if the corn or oats sold was ordered out after a contemplated reduction in freight rates became effective; the pur-chaser is entitled to a reduction where the car was ordered out of the concen-tration point after the reduced freight rate went into effect even though the corn was shipped to the concen-tration point before the reduced freight rate. The seller, having taken advan-tage of the reduced freight rate, must give the purchaser the benefit thereof.

Appeal from the Thirteenth Judicial Dis-trict Court of Louisiana, Parish of Rapides. Hon. L. L. Hooe, Judge.

This is a suit to collect a balance alleged due on a contract. A credit was allowed defendant on account of reduced freight rate and plaintiff appealed.

Judgment affirmed.

Hawthorn & Stafford, of Alexandria, at-torneys for plaintiff, appellant.

White, Hollomon & White, of Alexandria, attorneys for defendant, appellee.

OPINION

CARVER, J. Plaintiff, as liquidator of Cunningham Commission Company, sues de-fendant for $615.71 alleged balance due on a carload of oats. He appeals from a judgment in his favor for $54.88, being the amount sued for less $329.50 paid to de-fendant's agent, and less $231.33 claimed by defendant to be due it on another trans-action, which claim was allowed by the district judge as a credit.

The propriety of allowing this credit of $231.33 is the main question in this court.

The $231.33 is made up of the differ-ence in freight between an old and a new rate of freight on three cars of corn bought by defendant from Cunningham Commis-sion Company through its agent.

W. R. O'Neal testified, page 11, that he bought the corn on December 28-29, 1921, at 68 cents, including freight, deliverable at Alexandria, Louisiana, at his option during January, 1922, but with the understanding that a reduction in freight rate expected to take place about January 1st should inure to his benefit if the corn were or-dered after such reduction became effective. In this he is corroborated by plaintiff's agent, Pressburg, who sold him the corn and whose authority is not disputed.

He further testified that the corn was to be shipped from terminal points, which he explained, page 13, were markets from which shipments could move on through or proportional rates, not an ordinary transit point, and says that Kansas City, St. Jo-seph, Omaha and St. Louis are such points but that Little Rock is not.

He also testified, page 13, that it was understood he was to be provided with of-ficial weights and grades, these being cer-tificates issued by official inspectors and weighers duly commissioned to inspect, weigh and grade grain at terminals.

Pressburg says, page 26, that he does not recall and therefore neither affirms nor denies as to where the corn was to move from, but says he knows it was presumed that the corn had to move from beyond Little Rock.

He also says, page 23, that he "knew without mentioning that official weights and grades would cover, and usually the official weights and grades are generally furnished with the invoice on that car".

Neesom, a freight expert, testifying for defendant, page 37, on being asked what primary terminal points were, replied: "Con-centration points, where they have eleva-tors and duly sworn and authorized in-spectors and weighers, such as Kansas

City, Omaha, St. Joe, Atkinson, Kansas; St. Louis, Missouri, Cairo, Ill. They are called terminal primary markets, and it is. my understanding that all purchases are based on the terminal primary markets."

The reduction of rates took place, as expected, effective on shipments to Alexandria on January 7, 1922.

The old and new rates and differences were as follows:

| | Old Rate | New Rate | Difference |
|---|---|---|---|
| Omaha | 51.00 | 39.50 | 11.50 |
| St. Joe | 43.50 | 34.00 | 9.50 |

Various freight experts were examined on the question of whether the three cars should take the old or the new rate. The difference between them arises from the fact that some think the rate should be determined by the date of shipment from the concentration point′ or terminal market, while others think it should be determined by the date of shipment from the first place of shipment to the concentration point.

On car 35,205 they agree that new rate should apply, it having not only left the concentration point after January 7th, but having left the point of origin, Mercer, after that date.

As to car 110,924, waybilled from Little Rock January 14th, but by memorandum on this waybill shown to have been shipped from St. Joe January 7th, the new rate was actually applied and the witnesses seem to agree that this was proper because this waybill did not show the point of origin on the shipment to St. Joe, although plaintiff introduced a waybill from St. Joe to Little Rock which showed that the point of original shipment was Forest City, Missouri, and the date January 3rd.

The greatest difference between them is as to car 133,915, waybilled from Little Rock January 18th, 1922, the waybill showing that it originated at White Cloud, Nebraska, January 3rd, 1922, passing through St. Joe January 11th, 1922. This car was billed at the old rate which plaintiff, himself familiar with rates to a considerable extent, says was correct, and is corroborated by Hanly and Fleming, freight experts. Meeson, expert for defendant, says it should take the new rate. We cannot appreciate the reason given by the experts for determining whether to apply the old or the new rate; that reason being whether the waybill does or does not show that shipment to the concentration point took place before or after the reduction.

It seems to us that if the date of shipment to the concentration point is to govern it should do so whether the waybill shows it or not. However, these witnesses were testifying as to the proper rule to be applied between the railroad company and the shipper This case, though, is governed by the contract. This being that the corn was to be shipped from a concentration point we think the defendant entitled to the reduction on car 133,915 which left such point, St. Joseph, four days after the new rate went into effect. By selecting a car shipped from the interior before that time plaintiff could not increase the price of the corn over and above the contract price. If so, he might have reduced to utter emptiness the agreement about giving the purchaser the benefit of any rate reduction, by filling the entire order with cars originating at interior points before the reduction with privilege of milling in transit; it being in proof that this privilege lasted for twelve months.

The only remaining question is as to the $329.50 paid by defendant to plaintiff's agent. As we understand the matter; the plaintiff does not question the authority of his agent to receive this money but only questions his right to receive it in full settlement of the debt. We think, therefore, defendant is entitled to credit for it.

The judgment of the lower court being correct, it is hereby affirmed.